# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD SCARANTINO, Individually and On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. _____<br>) |
| v. | ) JURY TRIAL DEMANDED<br>) |
| XPLORE TECHNOLOGIES CORP., ANDREA GOREN, ROBERT N. MCFARLAND, KENT MISEMER, DONALD F. NEVILLE, THOMAS B. PICKENS III, ZEBRA TECHNOLOGIES CORPORATION, and WOLFDANCER ACQUISITION CORP., | ) CLASS ACTION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on July 5, 2018 (the "Proposed Transaction"), pursuant to which Xplore Technologies Corp. ("Xplore" or the "Company") will be acquired by Zebra Technologies Corporation ("Parent") and its wholly-owned subsidiary, Wolfdancer Acquisition Corp. ("Merger Sub," and together with Parent, "Zebra Technologies").

2. On July 5, 2018, Xplore's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Zebra Technologies. Pursuant to the terms of the Merger Agreement, Merger

Sub commenced a tender offer (the "Tender Offer") to acquire all of Xplore's outstanding common stock for $6.00 in cash for each share of Xplore common stock. The Tender Offer is set to expire 12:00 a.m. midnight, New York City time, at the end of the day on August 13, 2018.

3. On July 17, 2018, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the

owner of Xplore common stock.

9. Defendant Xplore is a Delaware corporation and maintains its principal executive offices at 8601 RR 2222, Building II, Austin, Texas 78730. Xplore's common stock is traded on the NASDAQ CM under the ticker symbol "XPLR." Xplore is a party to the Merger Agreement.

10. Defendant Andrea Goren ("Goren") is a director of Xplore.

11. Defendant Robert N. McFarland ("McFarland") is a director of Xplore.

12. Defendant Kent Misemer ("Misemer") is a director of Xplore.

13. Defendant Donald F. Neville ("Neville") is a director of Xplore.

14. Defendant Thomas B. Pickens III ("Pickens") is a director of Xplore.

15. The defendants identified in paragraphs 10 through 14 are collectively referred to herein as the "Individual Defendants."

16. Defendant Parent is a Delaware corporation and is a party to the Merger Agreement.

17. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Xplore (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19. This action is properly maintainable as a class action.

20. The Class is so numerous that joinder of all members is impracticable. As of the close of business on July 3, 2018, there were approximately 11,099,370 shares of Xplore common stock outstanding, held by hundreds, if not thousands, of individuals and entities

scattered throughout the country.

21. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

25. Xplore is engaged in the development, integration, and marketing of rugged mobile personal computer and hand held devices. Its rugged devices are designed to withstand hazardous conditions, such as extreme temperatures, driving rain, repeated vibrations, dirt, dust,

4

and concussive shocks. The intrinsically safe, ruggedized, and reliable nature of Xplore products facilitates the extension of traditional computing systems to a broader range of field personnel, including energy pipeline inspectors, public safety responders, warehouse workers, and pharmaceutical scientists. The Company's end-user customers include major telecommunications companies, leading heavy equipment manufacturers, vehicle manufacturers, healthcare providers, oil and gas production companies, the military, and first responders.

26. Through 2014, the Company focused on a single ultra-rugged tablet, the iX014, through multiple generations of that product. In 2014, Xplore began the introduction of multiple fully-rugged and rugged tablets that are lighter and less expensive than its original product. In 2015, Xplore acquired the assets of Motion Computing, Inc., another producer of rugged tablets, which acquisition was designed to expand our market share and reach.

27. During fiscal year 2018, the Company redefined its business model as a provider of rugged mobility systems, and began the process of introducing even more rugged products, including the XBOOK 2-in-1 device and the Xplore M60 handheld device. According to the Company, these changes were made to expand its addressable market and to serve the needs of its existing end-users and distribution channels.

28. On July 5, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with Zebra Technologies.

29. Pursuant to the terms of the Merger Agreement, on July 17, 2018, Merger Sub commenced the Tender Offer to acquire all of Xplore's outstanding common stock for $6.00 in cash for each share of Xplore common stock. The Tender Offer is set to expire 12:00 a.m. midnight, New York City time, at the end of the day on August 13, 2018.

30. If the conditions to the Tender Offer are satisfied or waived, Merger Sub will be

merged with and into Xplore, with Xplore surviving as a wholly owned subsidiary of Parent.

31. According to the press release announcing the Proposed Transaction:

Zebra Technologies Corporation (NASDAQ: ZBRA) and Xplore Technologies Corporation (NASDAQ: XPLR) today announced that their boards of directors have approved a definitive agreement in which Zebra will acquire all outstanding common stock of Xplore for $6.00 per share in cash. Under the terms of the agreement, Zebra plans to effect the acquisition via a tender offer.

Over its 22-year history, Xplore has established a leading position as an innovative developer of semi-, fully- and ultra-rugged tablets, 2-in-1 laptops, and a range of performance matched accessories. Xplore's highly differentiated products are designed to withstand demanding conditions across diverse end markets. These products serve existing vertical markets for Zebra such as retail, manufacturing, transportation & logistics and healthcare, and provide an inroad into new markets including oil & gas, utility, government and public safety. Xplore generated revenue of $87 million in the 12-month period ended March 31, 2018. . . .

Xplore's offerings complement Zebra's industry-leading enterprise mobile computing, data capture, and printing portfolios, which will now serve a wider range of enterprise customers and accelerate growth. Zebra's scale, vertical market expertise, and go-to-market footprint will create substantial synergies. Zebra expects this transaction to be neutral to its non-GAAP earnings for 2018, and accretive beyond this year. . . .

Terms of the Transaction
Zebra is effecting the acquisition through a public tender offer for 100% of the shares of Xplore. In connection with the execution of the merger agreement, certain Xplore shareholders have entered into tender support agreements with Zebra pursuant to which they have agreed to tender their shares to Zebra's offer. The aggregate consideration of the transaction, including assumed indebtedness, is expected to be less than or equal to $90 million. Zebra expects to fund the transaction with a combination of cash on hand along with fully committed financing available under its credit facility. The transaction is subject to customary closing conditions and is expected to close in the third quarter of 2018.

PJT Partners is acting as financial advisor and Kirkland & Ellis LLP is acting as legal advisor to Zebra. Sheppard Mullin is acting as legal advisor and Duff & Phelps provided a fairness opinion to Xplore.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

32. Defendants filed the Solicitation Statement with the SEC in connection with the

Proposed Transaction.

33. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

34. The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Duff & Phelps, LLC ("Duff & Phelps").

35. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

36. Significantly, defendants failed to disclose *any* financial projections of Xplore, despite the fact that Duff & Phelps was provided with, and relied upon, Xplore's financial projections to perform its valuation analyses to support its "fairness opinion."  For example, in performing its Discounted Cash Flow Analysis, Duff & Phelps used Xplore's unlevered free cash flow projections—which were calculated by taking the Company's earnings before interest and taxes ("EBIT"), subtracting taxes, adding back depreciation and amortization, and subtracting capital expenditures, and changes in working capital—for years 2019 through 2025. Additionally, in its Discounted Cash Flow Analysis, Duff & Phelps broke down (and weighted differently) the Company's projected unlevered free cash flows to those related to the Company's existing product lines, and those related to Xplore's "future new initiative growth

7

opportunities."

37. Defendants, however, failed to disclose the Company's projections of unlevered free cash flows, or the line item projections used to calculate those unlevered free cash flows. This information is material to Xplore stockholders, who are faced with a decision of whether to approve the Proposed Transaction and be cashed out of the Company forever, or reject the Proposed Transaction and remain stockholders in the standalone Xplore. Without this information, stockholders are being misled into believing that the merger consideration is fair.

38. Defendants also failed to disclose additional material information regarding other key inputs in Duff & Phelps' Discounted Cash Flow Analysis. In particular, the Solicitation Statement indicates that Duff & Phelps used discount rates ranging from 18.3% to 21.4%, which, according to the Solicitation Statement, "was developed using an estimated cash flow weighting of 13.75% to 15.75% for the Company's existing product lines and 35.0% for the Company's future new initiative growth opportunities, representing a late-stage venture capital return that is appropriate for the commercial and other risks associated with the launch of the Company's future new initiative growth opportunities into new product segments and service lines."

39. Discount rates are typically calculated by determining a company's weighted average cost of capital. To determine a company's enterprise value, the company's projected unlevered free cash flows and terminal value are discounted to present value using the discount rate, and are summed together. Here, defendants failed to disclose the key inputs used to calculate Xplore's discount rates. This information is necessary here because, according to the Solicitation Statement, Duff & Phelps developed its discount rates by atypically weighting the Company's projected cash flows differently, without adequately explaining Duff & Phelps' basis or source for doing so. In light of defendants' partial, misleading disclosure, defendants must

8

provide a full description of the inputs and assumptions Duff & Phelps relied upon to derive its notably high discount rate range of 18.3% to 21.4%.

40. The disclosure of the foregoing information is particularly important here because, although purporting to perform several valuation analyses of Xplore, Duff & Phelps relied only upon its Discounted Cash Flow Analysis to support its fairness opinion. Because that analysis was the exclusive basis for its fairness opinion and has been touted to stockholders in support of the Proposed Transaction, defendants must fully disclose all material information and key inputs in Duff & Phelps' Discounted Cash Flow Analysis to avoid making partial disclosures that mislead stockholders into believing that the merger consideration is fair.

41. With respect to Duff & Phelps' Selected M&A Transactions Reviewed analysis, the Solicitation Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed by Duff & Phelps in its analysis. Without this material information, stockholders cannot make an informed decision about whether the transactions selected by Duff & Phelps truly were comparable to the Proposed Transaction here. The failure to disclose the individual multiples and financial metrics of the selected transactions therefore was a material omission and renders the Solicitation Statement materially misleading by wrongly implying that Duff & Phelps' analysis supports the fairness of the merger consideration.

42. The omission of this material information renders the Opinion of the Company's Financial Advisor section of the Solicitation Statement false and misleading.

43. The Solicitation Statement omits material information relating to potential conflicts of interest of Duff & Phelps. Due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, stockholders are entitled to the full disclosure of investment banker compensation and all potential conflicts of

interest.

44. Specifically, defendants failed to disclose the amount of fees that Duff & Phelps has earned in connection with its services relating to the Proposed Transaction. Rather than disclose this basic information, defendants chose to selectively disclose only that, "[o]f Duff & Phelps' professional fees, 50% became payable upon its engagement and the balance became payable when it informed the Board of Directors that it was prepared to deliver the Opinion."

45. The greater amount of compensation that Duff & Phelps expected to earn in connection with the Proposed Transaction results in a greater possibility that Duff & Phelps would provide a favorable fairness opinion, regardless of the merit, to appease the Board. Thus, the omission of the amount of fees actually earned by Duff & Phelps is material because, without this information, stockholders cannot assess the magnitude of Duff & Phelps' potential conflict of interest. Defendants' current, partial disclosure causes the Solicitation Statement to be misleading.

46. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following sections of the Solicitation Statement: (i) Background; and (ii) Opinion of the Company's Financial Advisor.

47. The Solicitation Statement omits material information relating to the background leading to the Proposed Transaction, as well as material information relating to the Proposed Transaction itself, including key agreements that are an integral part of the Proposed Transaction.

48. In particular, the Solicitation Statement states that:

Concurrently with the execution of the Merger Agreement, each of the following stockholders of the Company entered into Tender and Support Agreements with Parent and Purchaser (the "Support Agreements"): (i) Andrea Goren, Andax LLC and Phoenix Venture Fund LLC; (ii) RGJ Capital, LLC; and (iii) Emerson Family

Foundation, Emerson Partners, J Steven Emerson IRA, J Steven Emerson Roth IRA and J. Steven Emerson (collectively, the "Supporting Stockholders"). Pursuant to the Support Agreements, the Supporting Stockholders have agreed, among other things, to tender all of their Shares in the Offer and take certain other actions in furtherance of the Merger.

49. Defendants, however, failed to disclose in the Solicitation Statement how many shares of the Company's stock are locked up in these Support Agreements. Understanding how much of the Company's stock is already contractually committed to be tendered into the Tender Offer is information that stockholders would find important in deciding whether to tender their shares. This information is particularly important here because three parties indicated an interest in acquiring the Company, but were all ignored in light of the fact that the Board caused the Company to enter into a lengthy exclusivity agreement with Parent prior to the execution of the Merger Agreement.

50. Further, the Solicitation Statement states that, on June 21, 2018, the Board's compensation committee, consisting of directors Pickens, Misemer, and Neville, agreed to pay bonuses to all of the Company's directors in connection with the Proposed Transaction. Presumably after being advised of the conflicted nature of these bonus payments, the compensation committee determined to eliminate the provision for bonuses for all directors and instead make a substantial payment of $4 million to Pickens only, as well as other bonuses to certain members of Company management. The Solicitation Statement, however, fails to disclose how the compensation committee and the Board determined the amount of compensation to pay Pickens, as well as whether Pickens and/or representatives of Zebra Technologies were involved in the negotiation and approval of the payment amounts.

51. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following sections of the Solicitation Statement: (i)

Tender and Support Agreements; (ii) Arrangements with Current Executive Officers and Directors of the Company; and (iii) Background.

52. The above referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### (Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)

53. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

54. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

55. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

56. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

57. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

58. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

59. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection

with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

60. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

61. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

62. Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

63. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

64. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65. Section 14(d)(4) of the 1934 Act states:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

66. Rule 14d-9(d) states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

67. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it

omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

68. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

69. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

70. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

**(Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Zebra Technologies)**

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants and Zebra Technologies acted as controlling persons of Xplore within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as directors of Xplore and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

73. Each of the Individual Defendants and Zebra Technologies was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the

issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

75. Zebra Technologies also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

76. By virtue of the foregoing, the Individual Defendants and Zebra Technologies violated Section 20(a) of the 1934 Act.

77. As set forth above, the Individual Defendants and Zebra Technologies had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

78. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

79. Plaintiff and the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding

with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: July 27, 2018

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)

**OF COUNSEL:**

Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*